UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LUIS MENDOZA DE LA CRUZ,
Plaintiff,

v.

SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-10648-AMO

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND PERMANENT INJUNCTION**

Re: Dkt. No. 1

Petitioner Luis Mendoza de la Cruz is a 56-year-old native of Mexico who last entered the United States in 2000. After a felony conviction and one year in prison, in November 2015, Mendoza was arrested by Immigration and Customs Enforcement, and was charged as removable for entering the country without inspection. In January 2016, he was released on bond, and since then he has been living with his family and community.

Before the Court is Mendoza's petition for a writ of habeas corpus, filed on September 17, 2026, Dkt. No. 1, seeking an order permanently enjoining the U.S. Department of Homeland Security from returning him to immigration detention without first providing him a hearing before a neutral adjudicator where the government bears the burden of demonstrating whether circumstances have changed such that his re-detention would be justified. On September 21, 2026, Mendoza filed an ex parte motion for a temporary restraining order ("TRO") seeking the same relief. Dkt. No. 8. The Court determined it appropriate to rule directly on the habeas petition, and ordered the government to respond to the TRO motion within its return to the habeas. The government filed its return to the habeas petition on September 24, 2026, Dkt. No. 13, and Mendoza filed his traverse on September 25, 2026, Dkt. No. 15. The Court heard argument related to both the habeas petition and TRO motion on September 28, 2026.

Because Mendoza has a liberty interest in remaining on bond and the *Mathews* factors support his as-applied due process challenge, the petition and injunction are **GRANTED** as modified.

## I. BACKGROUND[1]

Mendoza is a Mexican citizen who has been in the country since 2000. Dkt. No. 1 ¶ 16. He has two children who are U.S. citizens, and currently resides with his daughter in San Jose, California, where he also runs a construction company. *Id.* ¶ 9.

In August 2015, Mendoza was convicted of three felony charges, for which he was sentenced to one year in prison for each felony, to be served concurrently. Dkt. No. 13 at 6-7. On November 13, 2015, ICE arrested Mendoza at his home, and placed him in removal proceedings for entering the country without inspection. Dkt. No. 1 ¶ 22. On January 28, 2016, an immigration judge granted Mendoza's release on $10,000 bond, which was paid by Mendoza's brother. *Id.* His case remains pending before the Immigration Court. *Id.* In April 2018, Mendoza pled nolo contendere to a charge of California Penal Code § 242 and was issued a 10 day stay-away order – the only criminal conviction since his release from custody on bond. *Id.* ¶ 23. He has a withholding of removal application pending and has an individual calendar hearing before the immigration judge scheduled for May 31, 2029. *Id.* ¶ 22.

Early on August 31, 2026, Mendoza was at a stop light while driving to work, when two unidentified ICE officers approached Mendoza at his driver's seat window. *Id.* ¶ 24. Mendoza slightly lowered his window to speak with the officers. *Id.* When Mendoza showed his license through the window, the officers then identified themselves as ICE and told him that they had a warrant for his arrest. *Id.* Mendoza asked to see the warrant, but an officer told him that he would show Mendoza the warrant only after he left the vehicle. *Id.* Mendoza responded that he would

[1] When a court considers a viable habeas petition, "facts duly alleged may be taken to be true, unless denied by the return, or controlled by other evidence." *Carlson v. Landon*, 186 F.2d 183, 188 (9th Cir. 1950); *see also Pinson v. Carvajal*, 69 F.4th 1059, 1073 (9th Cir. 2023) ("Because the government contends jurisdiction is absent over [petitioner's] habeas petition as a matter of law, we are required to take [petitioner's] factual allegations as true, but not his legal conclusions.").

United States District Court
Northern District of California

not leave his vehicle until they showed him a warrant, which the officers refused to do. *Id.* One of the officers broke one of the windows of Mendoza's car, while other officers tried to break the other windows. *Id.* When the officers were no longer near the car, Mendoza slowly drove away, and went to work. *Id.*

When Mendoza got to work, an ICE officer called him and identified himself as ICE. *Id.* ¶ 25. The officer told Mendoza that they were revoking his bond. *Id.* The same officer said that they were going to give Mendoza "one more chance" to turn himself in or they would "hunt" him down. *Id.* Mendoza stated that he would first speak to his attorney before taking further action. *Id.* On that same day, ICE sent Mendoza's brother, as the bond obligor, a Form I-340, Notice to Obligor to Deliver Alien, to have Mendoza appear for an interview with ICE on October 1, 2026. Dkt No. 13 at 7; Dkt. No. 1 ¶ 26. These proceedings followed.

## II. LEGAL STANDARDS

### A. Statutory Framework

The default rule, Section 1226(a), "authorizes the Attorney General to arrest and detain an alien 'pending a decision on whether the alien is to be removed from the United States.' " *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (quoting 8 U.S.C. § 1226(a)). Every individual apprehended under Section 1226(a) is individually considered for release on bond. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(c)(8). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). "Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

Under 8 U.S.C. § 1226(b) and 8 C.F.R. § 236.1(c)(9), the DHS and ICE have authority to revoke a noncitizen's bond or parole "at any time," even if that individual has previously been released. The Board of Immigration Appeals has placed the following limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). In practice, the government re-arrests individuals only after a "material" change

in circumstances. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

### B. Habeas Corpus

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld,* 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to "restraints not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963). Declaratory and injunctive relief are proper habeas remedies. *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019))

## III. DISCUSSION

Mendoza brings an as-applied due process challenge to the government's ability to re-arrest him without a hearing to determine whether there has been a material change in circumstances. The government raises three arguments in opposition to Mendoza's petition. First, it claims this Court lacks jurisdiction over this action on statutory and Article III grounds. Second, it argues that due process does not attach because Mendoza has no liberty interest. Third, it asserts that, even if due process attaches, Mendoza is not entitled to the process he seeks.

### A. Jurisdiction

Mendoza requests the Court assume jurisdiction over this matter under "28 U.S.C. § 1331, general federal question jurisdiction; 5 U.S.C. § 701, et seq., All Writs Act; 28 U.S.C. § 2241, et seq., habeas corpus; 28 U.S.C. § 2201, the Declaratory Judgment Act; Art. 1, § 9, Cl. 2 of the United States Constitution (Suspension Clause); Art. 3 of the United States Constitution, and the

common law." Dkt. No. 1 ¶ 8. The government mounts three jurisdictional challenges. First, it argues that the Court cannot entertain the habeas petition because Mendoza is not "in custody" for Mendoza to invoke habeas under 28 U.S.C. § 2241(c). Second, the government contends Mendoza lacks Article III standing and that his claim is not ripe. Third, it avers the Court lacks subject matter jurisdiction because it cannot review a discretionary decision by ICE. The Court addresses each of these challenges in turn.

**1. Habeas Jurisdiction**

A court may grant habeas corpus relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The Supreme Court has 'very liberally construed the "in custody" requirement.' " *Sun v. Santacruz*, No. 25-cv 02198-JLS-JC, 2025 WL 2730235, at *3 (C.D. Cal. Aug. 26, 2025) (quoting *Maleng v. Cook*, 490 U.S. 488, 492 (1989)). "Habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases." *Preiser*, 411 U.S. at 487. "A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.' " *Ortega*, 415 F. Supp. 3d at 968 (quoting *Jones*, 371 U.S. at 240).

The Government contends that Mendoza is not "in custody" for habeas purposes because the conditions of Mendoza's bond are obligations imposed on all noncitizens, regardless of custody. Dkt. No. 13 at 9-10. The Court's focus, however, is whether Mendoza is subject to "restraints not shared by the public generally." *See Jones*, 371 U.S. at 240. Unlike the public generally, Mendoza is subject to the terms of his bond: updating his address, completing a residential treatment program, and appearing in immigration court. Dkt. No. 1 ¶ 7; Dkt. No. 15 at 2. Moreover, unlike other noncitizens, if he does not comply with these conditions, his bond can be revoked and he can be detained. Dkt. No. 15 at 2. Further, Mendoza is subject to compliance with a Form I-340, Notice to Obligor to Deliver Alien. *Id.* Production of these letters present a severe and immediate restraint on physical liberty that satisfies custody for purposes of habeas jurisdiction. *Dow v. Cir. Ct. of First Cir. Through Huddy*, 995 F.2d 922, 923 (9th Cir. 1993)

("[R]equiring appellant's physical presence at a particular place, significantly restrains appellant's liberty to do those things which free persons in the United States are entitled to do and therefore must be characterized, for jurisdictional purposes, as 'custody.' "); *see also Garro Pinchi v. Albarran*, No. 25-CV-10831-PCP, 2026 WL 1975598, at *4 (N.D. Cal. July 8, 2026) (collecting cases from the Supreme Court and Ninth Circuit where courts "recognized that conditions compelling a person's physical presence at specified times and locations are custodial"). Accordingly, the Court has habeas jurisdiction over this case.

Further, Mendoza raises due process claims and has invoked the Court's federal question jurisdiction, which serves as an alternative basis for jurisdiction. Dkt. No. 1 ¶ 8; *see Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) ("Plaintiffs' due process claims arise under the Constitution, and Plaintiffs invoked 28 U.S.C. § 1331, which provides subject matter jurisdiction irrespective of the accompanying habeas petition.").

**2. Article III Standing and Ripeness**

Federal courts may only adjudicate actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Article III gives rise to four justiciability doctrines: ripeness, standing, mootness, and political question. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). A plaintiff or petitioner must establish Article III standing to seek prospective injunctive relief by showing a future injury that is "imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013).

The government challenges Mendoza's standing on grounds that he has not yet suffered a concrete, particularized injury but "instead seeks relief for conjectural or hypothetical injuries that he believes may occur at some point in the future." Dkt. No. 13 at 13. Likewise, it avers that Mendoza's claim is not ripe because "the events of which he complains have not occurred and may not occur as he anticipates or at all." *Id.*

Mendoza alleges uncontested facts that indicate that the government intends to detain him at his October 1, 2026, appointment. On August 31, 2026, ICE officers tried to effectuate an arrest while Mendoza stopped at a stop light, and told him that they had an arrest warrant. Dkt. No. 1 ¶ 24. Mendoza repeatedly asked to see the warrant until the officers attempted and partially

succeeded in breaking his car windows. *Id.* When Mendoza arrived at work, an ICE officer called Mendoza and told him they would give him "one more chance" to turn himself in or they would "hunt" him down. *Id.* ¶ 25. Soon after threatening Mendoza, Mendoza's brother received the Notice to Obligor to Deliver Alien, ordering him to produce Mendoza at the ICE office on October 1. *Id.* ¶ 26. Considering ICE's actions and Mendoza's order to appear on October 1, 2026, the alleged injury of redetention without a pre-deprivation hearing is imminent and non-speculative. Regarding both standing and ripeness, Mendoza's risk of redetention without a pre-deprivation hearing provides a sufficient basis to grant emergency injunctive relief. *See Ayala v. Albarran*, No. 26-CV-03092-BLF, 2026 WL 2411598, at *3 (N.D. Cal. Aug. 18, 2026) (quoting *Aghajanyan v. ICE*, No. 25-cv-12255 MWC-JDE, 2026 WL 453477, at *2 (C.D. Cal. Jan. 21, 2026)). Mendoza can enforce his right to a pre-deprivation hearing "only by bringing a challenge now, prior to being re-arrested." *Ortega*, 415 F. Supp. 3d at 969. The Court thus rejects the government's challenges to Mendoza's standing or the ripeness of his claims.

**3. Subject Matter Jurisdiction**

The government maintains that, if ICE arrests Mendoza after determining that he should be re-detained, 8 U.S.C. § 1226(e) strips the Court of subject matter jurisdiction to review ICE's decision because it is discretionary. Dkt. No. 13 at 14-15. That argument misses the mark.

Mendoza raises an as-applied constitutional due process challenge to the government's ability to re-detain him on October 1, 2026, or some future date, without a pre-deprivation hearing, as it attempted to do on August 31, 2026. In short, Mendoza asks the Court to enjoin the government from violating his rights. The Court has jurisdiction over Mendoza's claim for this injunction. *See Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law.").

**B. Mendoza's Due Process Claim**

The Due Process Clause of the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Once a protected liberty interest is identified, the Court determines what process is required by weighing

the three *Mathews v. Eldridge* factors. 424 U.S. 319, 335 (1976). Mendoza asserts that he has a constitutionally protected liberty interest in remaining on bond, and due process entitles him to a hearing with an immigration judge prior to re-arrest. The Court first considers whether Mendoza has stated a protected liberty interest, and finding he has, examines each *Mathews* factor in turn to assess whether he is entitled to a pre-deprivation hearing.

**1. Protected Liberty Interest**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Accordingly, the Due Process Clause typically "requires some kind of a hearing before the State deprives a person of [their] liberty," even when it is lawfully revokable. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[] to live up to the . . . conditions [of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

Relying on *DHS v. Thuraissigiam*, 591 U.S. 103, 138-40 (2020), the government argues that Mendoza's due process rights are limited to those prescribed by statute. Dkt. No. 13 at 17-19. This Court rejects this argument because, as multiple courts in this district have explained, "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary

authority.”).

Mendoza has a constitutionally protected liberty interest based on the government’s decision to release him in 2016, issue a bond, and decline to re-arrest him in 2018 or any other time in the last eight years. *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (“[I]ndividuals conditionally released from detention have a protected interest in their ‘continued liberty.’ ”)

**2. *Mathews* Factors**

The Supreme Court identified three factors relevant to a due process inquiry: “First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” *Mathews*, 424 U.S. at 335. The Ninth Circuit has recognized that many courts have applied the *Mathews* test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206.

Courts in this district have repeatedly found that the *Mathews* factors support an individual’s constitutional right to a hearing before a neutral decisionmaker prior to any future detention. First, as explained above, Mendoza has a substantial private interest in remaining out of custody, which “enables him to do a wide range of things open to persons” who are free from custody. *Morrisey*, 408 U.S. at 482. Courts in this district have emphasized the increased salience of the liberty interest of someone like Mendoza, who has spent more than ten years living freely and forming all of the emotional, social, and professional attachments that come with a free life. *See, e.g.*, *J.A.M.C. v. Albarran*, No. 25-CV-09649-WHO, 2025 WL 3268816, at *4 (N.D. Cal. Nov. 24, 2025); *Harrington v. Albarran*, No. 26-CV-01889-JST, 2026 WL 800113, at *6 (N.D. Cal. Mar. 23, 2026). Further, “even when an initial decision to detain or release an individual is discretionary, the government’s subsequent release of the individual from custody creates an implicit promise that the individual’s liberty will be revoked only if they fail to abide by the conditions of their release.” *Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609, at

*2 (N.D. Cal. Aug. 22, 2025).

Even in cases where an individual breaks conditions of their release, the government still creates a continued liberty interest if they delay in their decision to re-arrest. *See Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1153 (N.D. Cal. 2025), *appeal dismissed*, No. 26-1003, 2026 WL 2445624 (9th Cir. June 17, 2026) (holding that the government provided the petitioner a reasonable expectation that he would remain at liberty when the government knew that petitioner was arrested, but did not detain him until eight months later); s*ee also Pham v. Becerra*, 717 F. Supp. 3d 877, 886 (N.D. Cal. 2024) (holding that a noncitizen's liberty interest does not depend on the length of time the federal government knew of the conviction and failed to initiate removal proceedings, but instead on the period of freedom the person enjoyed); *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1039 (N.D. Cal. 2025) (citing *Perera*, 598 F. Supp. 3d at 739) ("In fact, because Perera had not been taken directly from criminal custody into immigration detention, his liberty interest went far beyond that present in a typical detention situation under § 1226(c). Unlike the typical section 1226(c) detainee, Perera had spent six years after his release taking classes, building a career, getting married, and having a child. The fact that Perera was six years overdue for immigration detention did not diminish his liberty interest, but increased it."). Here, Mendoza was released from custody ten years ago, and he has been out of custody eight years after his most recent conviction, and thus has a strong interest in remaining out of custody. Accordingly, the first factor supports a pre-deprivation administrative hearing.

Regarding the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Mendoza of his liberty interest absent a pre-detention hearing. Where "an individual has not received a bond or redetermination hearing, 'the risk of an erroneous deprivation of liberty is high.' " *Calderon*, 2025 WL 2430609, at *3-4 (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). The Supreme Court has held that civil immigration detention pending removal is only appropriate where the person is a danger to the community or a flight risk. *Zadvydas*, 533 U.S. at 690. Accordingly, as the Ninth Circuit has explained, the government "has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose

appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

Here, the government has not asserted that detention of Mendoza would serve either purpose. The government has provided no facts that suggest that Mendoza is a flight risk given his strong ties to the community (including his children and grandchildren) or a danger to the community given the lack of any criminal record in the last eight years. The government generally argues that "[S]ection 1226(a) provides 'numerous levels of review, each offering the detainee the opportunity to be heard by a neutral decisionmaker.' " Dkt. No. 13 at 17 (quoting *Rodriguez Diaz*, 53 F.4th at 1209-10). The government's argument ignores that civil detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690. The risk of erroneous deprivation is significant for Mendoza, regardless of any general assertions about the facial adequacy of agency procedures. Accordingly, the second *Mathews* factor favors Mendoza.

As to the third factor, "fundamentally, there is no countervailing government interest. . . that supports conducting a bond hearing only after [the petitioner] has been detained, rather than in advance thereof." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025). The government provides only general assertions that the government has "a strong interest 'in preventing aliens from remaining in the United States in violation of our law.' " Dkt. No. 13 at 17 (quoting *Rodriguez Diaz*, 53 F.4th at 1208). Yet, the government makes no showing that a pre-deprivation hearing would obstruct its asserted interest. As Mendoza explains, he does not seek a unique or expensive process, but instead a routine hearing on whether his release should be revoked. Dkt. No. 8 at 20-21. Any fiscal or administrative burden would be non-existent, if not beneficial to the government. *See Hernandez* 872 F.3d at 996 ("The costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million."). Thus, the third factor also supports a pre-detention hearing.

Having determined that each of the *Mathews* factors favor Mendoza, the Court concludes that if the government wishes to re-detain Mendoza, due process requires that the government

provide him with a pre-detention hearing before a neutral decisionmaker. Mendoza may be detained only if the government proves by clear and convincing evidence at such a hearing that he poses a flight risk or danger to the community, or that his deportation is imminent. *See Rodriguez Diaz*, 53 F.4th at 1199 (summarizing Ninth Circuit opinions holding that due process requires that the government bear the burden of proving, by clear and convincing evidence, that a noncitizen poses a risk of flight or dangerousness before she can be detained).

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

a. The petition for writ of habeas corpus is GRANTED.

b. Respondents are PERMANENTLY ENJOINED AND RESTRAINED from re-arresting or re-detaining Mendoza unless and until they provide him a hearing before an Immigration Judge at which the government proves by clear and convincing evidence that he is a flight risk or a danger to the community.

c. The Clerk of the Court SHALL close the case.

**IT IS SO ORDERED.**

Dated: September 30, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**